[No. E001224. Fourth Dist., Div. Two. Oct. 23, 1985.]

FONTANA UNIFIED SCHOOL DISTRICT, Plaintiff and Respondent, v.
CITY OF RIALTO et al., Defendants and Appellants;
MARLBOROUGH DEVELOPMENT CORPORATION,
Real Party in Interest and Respondent.

726

COUNSEL

Robert G. Koch, Jr., City Attorney, and Edward M. Palmer, Assistant City Attorney, for Defendants and Appellants.

Parker & Covert, Clayton H. Parker, Spencer E. Covert, Jr., and P. Addison Covert for Plaintiff and Respondent.

No appearance for Real Party in Interest and Respondent.

OPINION

MORRIS, P. J.—The City of Rialto has appealed a judgment granting a peremptory writ of mandate in favor of the Fontana Unified School District (District). The judgment ordered the city to withhold the issuance of building permits in connection with a residential development within the District's boundaries until such time as the developer pays to District, pursuant to the "School Facilities Act" and Rialto Ordinance No. 841, a school facilities fee in the amount of $1,496 for each lot in the development.

The developer, Marlborough Development Corporation, has not appealed and has advised this court that it will not participate in the appeal but will abide by the final decision in the matter.

### PROCEDURAL HISTORY

In 1977 the state Legislature determined that new housing developments frequently cause overcrowding of existing school facilities which cannot be alleviated in a reasonable period of time because funds for construction of new classroom facilities may not be available. The School Facilities Act was enacted for the purpose of establishing an interim method of providing classroom facilities where such overcrowded conditions exist. (Gov. Code, § 65970.)[1]

The statute becomes applicable when

---

[1] All references are to the Government Code unless otherwise indicated.

1. The governing body of a school district makes findings that (a) conditions of overcrowding exist, and (b) no feasible method of mitigating the conditions exist,

2. The school district notifies the city council of its findings and specifies the mitigation efforts considered, and

3. The city concurs. (§ 65971.)

Thereafter, the city "shall not approve an ordinance rezoning property to a residential use, grant a discretionary permit for residential use, or approve a tentative subdivision map for residential purposes, within such [attendance] area, unless [it] makes one of the following findings: (1) That an ordinance pursuant to Section 65974 has been adopted, or (2) That there are specific overriding fiscal, economic, social, or environmental factors which in the judgment of the city council . . . would benefit the city . . . justifying the approval . . . ." (§ 65972.)

Section 65974 provides that a city may by ordinance require the dedication of land, the payment of fees, or both for school facilities "as a condition to the approval of a residential development, . . ." Where the payment of fees is required, "the payment shall be made at the time the building permit is issued or at a later time as may be specified in the ordinance." (§ 65974.)

At the time Marlborough obtained subdivision approvals by the city and recorded the tract maps pertinent to this development, there had been no finding of overcrowding pursuant to section 65972 and there was no ordinance pursuant to the School Facilities Act in the City of Rialto. Tract map No. 10372 was recorded in 1978. Tract No. 10933 was recorded in 1981.

Thereafter, on January 5, 1982, the city adopted Ordinance No. 841 to provide a method for interim financing of school facilities necessitated by conditions of overcrowding caused by new residential development.

The ordinance provided, inter alia, for the school district findings as prescribed by section 65971 and specified the content of the findings as follows:

"Findings filed pursuant to section 7 shall contain the following:

"(a) A precise description of the geographic boundaries of the attendance areas to which the findings relate;

"(b) A list of the mitigation measures evaluated by the governing board of the school district and a statement of the reasons why such measures were found to be infeasible;

"(c) A summary of the evidence upon which such findings were based; and

"(d) Such other information as may be required by regulations adopted by the City Council pursuant to this ordinance." (Ord. No. 841, § 8.)

Section 9 of the ordinance provides in pertinent part as follows:

"After receipt of findings complying with the requirements of this ordinance the City Council shall by resolution either concur in or reject such findings. Such findings may be rejected only if the Council determines that such findings are not supported by the weight of the evidence. . . ."

The ordinance further provides in section 12 that once such determination of overcrowding is made no decision-making body shall approve a residential development unless it first determines one of the following: (a) there exists a mitigation agreement; (b) where the application is for a building permit, that the school fees required by the ordinance have been paid; (c) (relates to other approvals); (d) overriding factors the same as listed in section 65972 of the School Facilities Act; or (e) both city and school district have approved restrictions prohibiting the residence of minor children in the development.

Approval of a residential development is defined in section 6(d) of the ordinance as follows:

"(d) 'Approve a Residential Development' means for residential development.

"(a) to grant a building permit; . . ."

On July 14, 1983, Marlborough notified the city that it was preparing to request building permits for the tracts and requested the city's determination of the amount of school fees to be required.

On July 20, 1983, the District's board made its findings that conditions of overcrowding exist in the schools of the District and established the fee of $1,496. Appellant has not attacked the sufficiency of the evidence supporting the trial court's decision and has not asserted that there was any

irregularity in the District's compliance with the School Facilities Act in making its determination of overcrowding.

On September 6, 1983, the city council concurred in the findings that overcrowding exists in the Fontana Unified School District. However, it delayed the setting of the school impaction fee until after a school impaction fee had been set by the City of Fontana.

On November 22, 1983, the District requested the city to impose the school impaction fee of $1,496 per dwelling unit in Tracts 10372 and 10933.

On December 1, 1983, the city declined to find that due to "overriding physical [sic] and economic factors," no school impaction fees be applied to the Marlborough development as recommended by its city manager. At the December 1, 1983, meeting of the city council, Marlborough's representative stated that Marlborough was prepared to pay the $1,496 per lot fee.

On January 17, 1984, the City Council of the City of Fontana approved the school impaction fee requested by the District in the amount of $1,496 per dwelling unit in accordance with the District's Declaration of Impaction.

Based upon its city attorney's opinion that Marlborough was exempt because the tentative tract maps were approved prior to enactment of the ordinance, the City of Rialto did not fix a school facilities fee, but issued certain building permits for Tract 10372 without requiring the payment of the school facilities fee.[2]

## CONTENTIONS

The city contends that:

(1) The trial court erred in requiring the city to impose the school facilities fee upon Marlborough whose final maps were approved and recorded more than four years prior to the adoption of the ordinance authorizing the imposition of fees.

(2) If it is determined that such fees may be imposed, it is not permissible for the court to control the city's discretion by setting the amount of the fees.

---

[2]The city and Marlborough had entered into a written agreement that Marlborough agreed that it was responsible for the fees in the event of litigation and if the fees were ultimately imposed.

## DISCUSSION

### I

■ Appellants contend that the school facilities fees should be viewed as conditions for subdivision approval on the same footing as fees enumerated in the Map Act and as such the city may not impose new conditions upon a subdivision after the approval of the tentative and final maps.

In support of this argument appellants direct attention to the similarity between the School Facilities Act and the provisions of section 66477, which authorizes a city or county to require the dedication of land or the imposition of fees, or both, for park or recreational purposes.

We perceive no similarity except that both statutes authorize the imposition of fees and/or dedication of land. The school facilities fee is not in the Subdivision Map Act but is authorized by a separate act. The Subdivision Map Act is primarily concerned with land use planning. Parks and recreational facilities are an integral part of land use planning, whereas, the purpose of the School Facilities Act is to provide funding for interim school facilities where overcrowding results from the housing development. Land use planning must be determined in advance of the development because of its permanence, whereas, impaction cannot be determined until it occurs. The School Facilities Act does not authorize speculation, but requires findings on the existence of overcrowding.

Appellants' reliance on *El Patio* v. *Permanent Rent Control Bd.* (1980) 110 Cal.App.3d 915 [168 Cal.Rptr. 276], is misplaced. In that case, after the planning commission of Santa Monica approved a tentative map for the conversion of a rental apartment building to condominiums, a rent control charter amendment was passed, requiring a permit for the removal of controlled rental units from the housing market. The city then attempted to impose this condition after the tentative map approval. The court held that the city could not impose additional conditions after the approval of the tentative map in violation of the Map Act. However, the court specifically noted that if building permits were involved the issues would have been different and that "[n]othing herein should be construed as a determination that the approval of a tentative map would allow a property owner to proceed without obtaining other permits which the City might impose if it were not relying upon the Subdivision Map Act." (*El Patio* v. *Permanent Rent Control Bd., supra,* at p. 927.)

Appellants further contend that Marlborough had acquired a vested right by the approval and recordation of its final map. This is true, the city ar-

gues, because all final discretionary approvals had occurred before the operative date of Ordinance No. 841.

Appellants point to the language in section 65972 which provides that once the city council concurs in the determination of overcrowding, the city "shall not approve an ordinance rezoning property to a residential use, grant a discretionary permit for residential use, or approve a tentative subdivision map for residential purposes" unless it makes the specified determinations.

Appellants argue that in this case the last discretionary act was the tentative map, and that Marlborough, having complied with the conditions imposed therein, is entitled to the issuance of building permits as a matter of right.

The argument that the issuance of a building permit is merely ministerial has been rejected by the California Supreme Court in *Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785 [132 Cal.Rptr. 386, 553 P.2d 546]. In *Avco,* the court was considering Avco's claim to an exemption from the requirements of the Coastal Zone Conservation Act because it had obtained tentative map approval prior to the adoption of the act. The Supreme Court stated:

"The contention that Avco was entitled to a building permit because the county would have been compelled to issue it upon mere application has no merit. The Orange County Building Code (§ ·302(a)) provides that a building permit may not issue unless the plans conform not only to the structural requirements of the code but to 'other pertinent laws and ordinances.' *This provision codifies the general rule that a builder must comply with the laws which are in effect at the time a building permit is issued, including the laws which were enacted after application for the permit. (Brougher* v. *Board of Public Works* (1928) 205 Cal. 426, 435 [271 P. 487]; see *Russian Hill Improvement Assn.* v. *Board of Permit Appeals* (1967) 66 Cal.2d 34, 39 [56 Cal.Rptr. 672, 423 P.2d 824]; cf. *Miller* v. *Board of Public Works* (1925) 195 Cal. 477 [234 P. 381, 38 A.L.R. 1479]; and see cases collected in 50 A.L.R.3d 596, 602.) A landowner which has not even applied for a permit cannot be in a better position merely because it had previously received permission to subdivide its property and made certain improvements on the land." *(Id.,* at p. 795, italics added.)

Moreover, both the act and Ordinance No. 841 recognize the potency of the building permit as the act that triggers the need for the facilities fee to provide for overcrowding. Section 65974 specifically provides that "the payment shall be made at the time the building permit is issued or at a later

time as may be specified in the ordinance." Ordinance No. 841 provides in section 12, subdivision (b) that once impaction has been determined, there is to be no approval "[w]here the application is for a building permit [unless] the school fees as required by this ordinance [have been paid]."

Also, Ordinance No. 841 defines "Approve a Residential Development" as including "to grant a building permit."

We conclude that the city could properly impose the school facilities fees as a condition to the issuance of the building permits in this case.

Our conclusion is consistent with views expressed in *McLain Western #1* v. *County of San Diego* (1983) 146 Cal.App.3d 772 [194 Cal.Rptr. 594] and *Laguna Village, Inc.* v. *County of Orange* (1985) 166 Cal.App.3d 125 [212 Cal.Rptr. 267].

In *McLain* the first division of this district Court of Appeal held that the county was entitled to impose a school fee pursuant to its school facilities ordinance upon developer McLain, notwithstanding the fact that the development had been granted tentative map approval and final maps were recorded prior to the adoption of the County of San Diego's school facilities ordinance.

In *Laguna Village* the third division of this district upheld the imposition of the school facilities fees as a condition to the issuance of building permits where the findings of overcrowding and the county ordinance were adopted subsequent to tentative map approvals and the issuance of a conditional use permit.

Justice Sonenshine, writing for the court, stated: "Logic, if not common sense, dictates 'approval of a residential development' includes *all* necessary approvals, including approval of a building permit. If the ordinances are enacted, as here, *before* a particular school area becomes overcrowded, the enabling ordinance is in effect long before section 65972 becomes relevant as to a *particular attendance area.* In that instance we see no reason to arbitrarily restrict 'approval' to the three occasions mentioned in section 65972.

"Laguna argues because the fee payment must be made at the time the building permit is issued, it must have been *imposed* at an earlier time. However, we feel the Legislature logically chose this stage as representing the final approval necessary to completion of the project. Any payment made prior to this point would be an unnecessary and unrefundable expend-

iture in the event the development was aborted. Merely because payment is due when the permit is issued does not preclude imposing liability for that payment as a condition precedent to granting the permit." (*Laguna Village, Inc.* v. *County of Orange, supra,* 166 Cal.App.3d at pp. 129-130.)

## II

■ Finally, appellants contend that even if it is determined that the facilities fees may be imposed, mandamus is an inappropriate remedy because mandamus does not lie to control discretion. Appellants argue that both the statute and the ordinance provide for alternative actions by the local legislative body and that in any event the amount of the fee is, absent a showing of prejudicial abuse of discretion, strictly within the discretion of the city council.

Appellants are correct that initially section 65972 provides for alternative findings which may be made by the city. These same alternatives have been incorporated in the ordinance. (§ 12, subd. (d).)

However, in this case the city specifically rejected the alternative finding that the Marlborough development be exempt on the ground that "there are specific overriding fiscal, economic, social, or environmental factors" justifying approval.

Such finding was recommended by the city manager on December 1, 1983, and the council heard argument on the issue. Thereafter, having already made its finding of overcrowding, and presumably, in compliance with section 9 of Ordinance No. 841, concurring in the School District's finding that mitigation measures were not feasible, the city had the duty to impose a school facilities fee prior to the issuance of any building permit.

Nevertheless, we agree with appellant that the amount of the fee to be imposed is a matter within the discretion of the city council.

■ Mandamus cannot be used to control the discretion conferred on public officers, or governmental bodies. (*Faulkner* v. *Cal. Toll Bridge Authority* (1953) 40 Cal.2d 317, 326 [253 P.2d 659].) However, "[w]hile ordinarily, mandamus may not be available to compel the exercise by a court or officer of the discretion possessed by them in a particular manner, or to reach a particular result, it does lie to command the exercise of discretion—to compel some action upon the subject involved." (*Hollman* v. *Warren* (1948) 32 Cal.2d 351, 355 [196 P.2d 562].)

Thus, in this case, mandamus may not be used to require the council to impose a particular school facilities fee. However, there is no question that it may properly issue to compel the city council to exercise its discretion to fix the amount of the fee and, having done so, to perform the then ministerial act of imposing it prior to the issuance of any building permit.

The judgment granting the writ is modified to so provide, and as modified the judgment is affirmed.

Kaufman, J., and McDaniel, J., concurred.