[No. D003935. Fourth Dist., Div. One. Apr. 30, 1987.]

ARDELIA McCLURE et al., Plaintiffs and Respondents, v.
COUNTY OF SAN DIEGO et al., Defendants and Appellants.

COUNSEL

Lloyd M. Harmon, Jr., County Counsel, Daniel J. Wallace, Chief Deputy County Counsel, and Greer D. Knopf, Deputy County Counsel, for Defendants and Appellants.

Thistle & Krinsky and Daniel J. Sullivan for Plaintiffs and Respondents.

OPINION

**KREMER, P. J.**—Approximately 14 months after an unfair labor practice charge was decided in their favor, Ardelia McClure, James McCarty, Charlonna Beach and Frank Pierce (respondents) sought a writ of mandate directing the County of San Diego, the board of supervisors, the chief administrative officer and the director of the department of social services (County) to implement the hearing officer's decision and order. Finding the County had unreasonably delayed its response to the order and decision, the trial court granted the writ. On appeal, the County contends mandate here improperly restricted administrative discretion vested in the chief administrative officer. We agree and reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

The County of San Diego Department of Social Services (DSS) employed the respondents as contract specialists. Although they were permanent employees, the respondents were given notice on July 26, 1982, their positions would be eliminated due to an administrative budget cut. Respondents were each offered and accepted a demotion in lieu of a layoff. Based on a subsequent complaint, the County of San Diego Civil Service Commission (Commission) investigated the reclassification scheme and resulting demotions. The Commission determined the personnel actions were improper and ordered the respondents reinstated as contract specialists.

The respondents were eventually reinstated in June 1983. One month later, however, the respondents were again notified their positions were going to be eliminated, and they were again offered demotions in lieu of being laid off.

Alleging the new round of demotions was retaliatory, the San Diego County Employees' Association filed an unfair labor practice charge under the labor relations ordinance (San Diego County ord. No. 6273 (new series)) (hereafter Ordinance). A hearing officer was assigned, and the investigation commenced. On July 31, 1984, the hearing officer issued his decision and order. He concluded: "1. The Department of Social Services in its layoff/ demotion of Ardelia McClure on August 18, 1983 did discriminate against said employee for having exercised the right to participate in activities of an employee organization of her own choosing for the purpose of representation on all matters of employer-employee relations as provided in Article II, Section 2 of the Labor Relations Ordinance.

"2. The Department of Social Services in its layoff/demotion of Ardelia McClure, Charlonna Beach, James McCarty, and Frank Pierce on August

18, 1983 discriminated against the San Diego County Employees' Association by violating the exercise of its right to represent said employees in the Public Service Bargaining Unit, as a recognized employee organization representing employees in represented units on all matters within the scope of representation as provided in Article IV, Section 1(g) of the Labor Relations Ordinance." In his corresponding order, the hearing officer directed DSS to reinstate the respondents to full-time contract specialist positions and to pay them back salary and benefits ". . . from the date of removal to the date of reinstatement or until the date that an offer of reinstatement has been declined."

The hearing officer submitted his decision and order to Clifford W. Graves, chief administrative officer for the County, on August 3, 1984. Upon receipt of the decision and order, Graves was charged, under article VIII of the Ordinance, to implement the order or timely determine whether the decision and order misinterpreted or violated County policy or the County charter. However, Graves did not act immediately and instead attempted to resolve both the unfair labor practice charge and other pending litigation in a single negotiated settlement. An accord, however, was not reached. Also during this time Graves resigned his position.

On September 18, 1985, the respondents brought an action for declaratory relief, injunction and damages for civil rights violations under 42 United States Code section 1983. In the same pleading, they also petitioned for a writ of mandate commanding the County to implement the decision and order.

In concluding his administrative work, Graves again turned to the unfair labor practice decision and order in October 1985. After reviewing the hearing officer's findings and the proffered evidence, Graves on October 22, 1985, determined the decision and order ". . . misinterprets or violates County policy and the Charter. That part of the Decision and Order determining that an unfair labor practice was committed against the employee organization, exceeds the scope of the defined unfair labor practices in Article VII Section 1 of the Ordinance. Discrimination against an employee organization is not recognized by the Ordinance, except for the cause of dominating or interfering with the formation of an employee organization or failure or refusal to meet and confer. . . ." Graves therefore recommended to the board of supervisors they reverse the unfair labor practice decision and order.

The trial court heard the case on October 25, 1985, granted the petition for writ and awarded attorney's fees under Government Code section 800.

The County timely appealed from the judgment granting the peremptory writ of mandate.

DISCUSSION

I

Preliminarily, we note the respondents' petition for writ of mandate was but a part of a pleading also seeking declaratory relief, injunction and damages for violating 42 United States Code section 1983. ■ Although a judgment granting a peremptory writ of mandate is itself appealable (Code Civ. Proc., § 904.1, subd. (a); *People* v. *Municipal Court (Marandola)* (1979) 97 Cal.App.3d 444, 447 [158 Cal.Rptr. 739]), where counts within the same pleading remain unresolved, the one final judgment rule supports dismissal of the appeal to avoid piecemeal litigation. (*Knodel* v. *Knodel* (1975) 14 Cal.3d 752, 760 [122 Cal.Rptr. 521, 537 P.2d 353]; *Lemaire* v. *All City Employees Assn.* (1973) 35 Cal.App.3d 106, 109-110 [110 Cal.Rptr. 507].) However, our courts have not inflexibly adhered to this rule and have excepted cases when the otherwise premature or partial judgment, in its own right, is appealable and unnecessary delay and economic hardship can be avoided by hearing the appeal. (*Guntert* v. *City of Stockton* (1974) 43 Cal.App.3d 203, 208-209 [117 Cal.Rptr. 601]; see *Elmore* v. *Imperial Irrigation Dist.* (1984) 159 Cal.App.3d 185, 191-192 [205 Cal.Rptr. 433]; *DeGrandchamp* v. *Texaco Inc.* (1979) 100 Cal.App.3d 424, 436 [160 Cal.Rptr. 899]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 65, pp. 89-90.) In such a circumstance, asserting appellate jurisdiction flexes only a court-made policy, and not a statutory rule. (*Guntert* v. *City of Stockton, supra,* at p. 209.) Here both parties have already assumed the cost and effort of briefing and preparing this appeal, and neither present any procedural or substantive reason why the appeal from the judgment granting the writ of mandate should not now be heard. Indeed, the implicit position of their arguments is that all parties would be well served by a speedy resolution of the writ issue. Therefore and at the potential cost of a second appellate decision, we exercise our discretion to assert jurisdiction over the instant case. We do not, however, opine what collateral effect our hearing of this appeal will have on the remaining causes. We now advert to the substance of the County's appeal.

II

■ Under Code of Civil Procedure section 1085, a writ of mandate will lie to compel an act the law specially enjoins when the respondent has a clear, present and usually ministerial duty to act and the petitioner has a clear, present and beneficial right to the performance of that duty. (*Loder* v.

*Municipal Court* (1976) 17 Cal.3d 859, 863 [132 Cal.Rptr. 464, 553 P.2d 624]; *Frost* v. *Trustees of Cal. State University and Colleges* (1975) 46 Cal.App.3d 225, 229 [120 Cal.Rptr. 1].) Mandate, however, will not issue ". . . to compel a public administrative agency possessing discretionary power to act in a particular manner. The court in response to appropriate application may compel such agency to act, but it may not substitute its discretion for the discretion properly vested in the administrative agency. [Citations.]" (*Lindell Co.* v. *Board of Permit Appeals* (1943) 23 Cal.2d 303, 315 [144 P.2d 4]; accord *People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 491 [96 Cal.Rptr. 553, 487 P.2d 1193].) ■ In the present writ of mandate, the County sees an improper intrusion into administrative discretion and consequently contends the writ grant was abusive. We agree.

Article VIII of the Ordinance frames the chief administrative officer's discretion in handling and reviewing an unfair labor practice decision and order. After such a decision and order is submitted to the chief administrative officer, any party to the proceeding ". . . may file with the Chief Administrative Officer, a statement in writing setting forth exceptions to the Decision and Order alleging that it contains a misinterpretation(s) or violation(s) of County Policy or County Charter, together with a written brief in support of said exceptions. . . ." (Ordinance), art. VIII, § 11, subsec. (b)(2).) If no exceptions are filed within 20 business days, ". . . the Decision and Order shall then stand. The parties shall then meet to develop the appropriate implementation procedure, if any is required." (*Id.* at subsec. (b)(1).) If, however, exceptions are filed, the chief administrative officer, within 15 business days after the period for filing exceptions has expired, ". . . shall determine whether the hearing officer's Decision and Order contains the alleged misinterpretation(s) or violation(s)." (*Id.* at subsec. (b)(2).) The chief administrative officer could reach this determination him or herself or could refer the matter to the hearing officer for reconsideration or to the board of supervisors for its consideration. (*Id.* at subsecs. (b)(3), (b)(4)(i), (b)(4)(ii).)

The County avers Graves's October 1985 review of the decision and order was a proper, though untimely, exercise of his discretion under Ordinance. The respondents counter Graves was without discretion since no written exceptions were filed within 20 business days after the decision and order was submitted to him. This being so, they continue, Graves had no alternative but to meet with the respondents to implement the decision and order.[1]

---

[1]At argument below on the writ, the respondents argued Graves's response was without force because no exceptions had been filed within 20 business days after Graves received the deci-

Given the Ordinance's limited response time to an unexcepted decision and order, the respondents' position would appear to have merit. However, the record does not support the respondents' conclusion the present decision and order remained unexcepted. In his declaration in opposition to the petition, Graves stated the County filed an exception to the decision and order and its supporting brief on August 17, 1984.[2] This filing is clearly within 20 business days after Graves's August 3 receipt of the decision and order, and consequently must be seen as timely under article VIII, section 11, subsection (b)(2) of the Ordinance. Romulo Sarno, Jr., senior labor relations specialist for the County, also declared exceptions were filed with the chief administrative officer. (Sarno, however, did not mention a filing date.) The respondents offer no contradictory evidence, nor do we find any. Apparently, the respondents were aware of this same evidence at the petition hearing. There, the respondents' counsel stated: "When we filed our petition we were under the impression that no exception had been filed to the decision and order, and we argued that because no exception had been filed, the order had to be implemented within 20 days of having been filed. Subsequently we have learned—or at least Mr. Graves alleges that exceptions were filed." Thus, on this record, we cannot hold Graves was without discretion to review the decision and order.[3]

It is clear, however, Graves's eventual review of the decision and order

---

sion and order and, in any event, Graves had not responded at all within 15 business days after the exceptions period had expired. As respondents' counsel stated: "He has discretion conceded, your Honor, under the words of the ordinance, but that discretion was exhausted some time ago. He did not simply pass on the allegations, whatever they were. We have no way of knowing that the decision and order was in violation of county charter or policy. We have no allegation to that effect. Even if there were, he had a time frame in which to deal with that, 15 days." However, on appeal the respondents somewhat confusingly compress both aspects of their argument below into the single proposition Graves lacked discretion when he eventually responded in October 1985. Nevertheless, upon close inspection, it is the time limit for an *unexcepted* decision and order on which the respondents' pin their claim of lapsed discretion: "[I]n the instant case, the time limits upon the exercise of such discretion put County's officers in a posture where they are under a ministerial duty to implement the arbitrator's decision and order: The ordinance provides that with respect to the decision and order on an unfair labor practice charge the decision and order *shall stand* unless written exceptions are filed within twenty days after the decision and order is filed with the chief administrative officer. (Ordinance, Art. VIII, § 11, subd. (b).)"

[2]Graves also states the County, on June 13, 1984, requested and received an *extension of time* to file its exception. This statement is puzzling since the decision and order was not filed until July 31, 1984. Moreover, there does not appear to be any provision to request or grant an extension under article VIII.

[3]The trial court did not make a specific finding regarding the exceptions and instead ruled: "Well, even in the absence of assuming that the exceptions were filed timely, even in the absence of time limitations as to when a meeting should be held, certainly a reasonable amount of time should be used and I don't think that 14 plus months is reasonable at all when somebody's interrst are [sic] pending .... [¶] The writ will be granted and reasonable attorney's fees as well because I think the action or nonaction was capricious and arbitrary."

was untimely since the Ordinance required a determination within 15 business days after the exceptions period expired. (Ordinance, art. VIII, § 11, subsec. (b)(2).) The question remains whether Graves's inaction for some 14 months somehow affirmed the decision and order. We think not. As previously stated, article VIII of the Ordinance frames both the nature and season of a chief administrative officer's response to a decision and order. The alternative responses *all* require some *affirmative* action be taken. That is, the officer may affirm the decision and order despite the exceptions (*id.* at subsec. (b)(3)) or may pass it to the hearing officer or board of supervisors for further review (*id.* at subsec. (b)(4)). Nowhere does the article VIII suggest a decision could be reached through inadvertance or negligence. That administrative inaction will not suffice for affirmative decisionmaking after an *exception* has been filed is also a sound practice. Before an exception is filed, the decision and order is undisputed. With no controversy, further administrative review would serve no purpose. However, after the decision and order is put at issue, another reasoned and affirmative resolution is warranted, hence the mandates of article VIII, section 11, subsections (b)(3) and (4). Arguably, sometime after the expiration of the 15-business-day limit a writ of mandate could have issued to compel Graves to review the order and decision. Nothing in the Ordinance, however, would have allowed the trial court to compel Graves *to follow a particular course in his review.* (See, e.g., *Fontana Unified School District* v. *City of Rialto* (1985) 173 Cal.App.3d 725 [219 Cal.Rptr. 254].) Here, Graves has already acted and has filed a statement with the board of supervisors recommending reversal of the unfair labor practice decision and order. We recognize the proximity of Graves's filing his statement with the board to the hearing on respondent's application for mandate strongly indicates the lawsuit motivated Graves's action. However, these facts do no more than underscore the efficacy of a lawsuit or threat of one in getting a recalcitrant administrator to act. A writ of mandate issued now could properly compel no more than Graves has already done. With Graves's duties complete, mandate is unnecessary.

### DISPOSITION

Reversed.[4] The court is directed to deny the petition for writ of mandate and enter judgment for appellants. Parties to bear their own costs on appeal.

Lewis, J., concurred.

---

[4]Resolving this case as we have, we need not determine whether the mandate petition was improperly verified or the attorney's fees were improperly awarded.

**WIENER, J.,** Concurring and Dissenting.—I agree with the majority that the County timely filed exceptions to the hearing officer's decision and order as required by article VIII, section 11, subsection (b)(2). I also agree that there are situations in which the chief administrative officer (CAO) may delay more than 15 county business days before acting on timely filed exceptions, i.e., the 15-day period of article VIII, section 11(b)(2) of the San Diego County Labor Relations Ordinance (Ordinance) is not jurisdictional. My only, but rather fundamental, disagreement with the majority is that under their interpretation of the Ordinance the CAO may intentionally and/or unreasonably refuse to take any action on the hearing officer's decision and order, leaving the aggrieved party with the questionable remedy of filing suit to obtain a favorable decision. In my view the purpose of the Ordinance mandates that the CAO determine the validity of the exceptions within the stated time period unless good cause can be shown for a later decision. Because the issue of good cause was never directly addressed by the trial court, I would reverse the judgment to permit further proceedings to determine whether the CAO was justified in deferring his decision.

The majority opinion is principally devoted to what I respectfully believe is a nonissue , i.e., whether the County filed exceptions with the CAO within 20 days after the hearing officer's decision and order. I think it is clear that the exceptions were timely filed and the employees do not seriously contend otherwise. The parties and the trial court recognized the crucial issue was whether the CAO could postpone his decision indefinitely once the exceptions had been filed and the 15 days had expired. The CAO tried to explain his delay by stating he was under the impression the employees had acquiesced in postponing further action in light of the CAO's efforts to settle the case. The trial court's decision assumed that the exceptions were timely filed and went on to conclude that the CAO's 14 months of inaction amounted to arbitrary and capricious delay. Within this frame, our function is to decide the correctness of the trial court's implicit conclusion that the 15-day period was not jurisdictional and, if not jurisdictional, further determine whether sufficient evidence supports the court's factual finding that the delay was arbitrary and capricious.

The majority's holding that the CAO is not bound by the prescribed 15 days is based on their analysis that the Ordinance requires the CAO's reasoned and affirmative decision. The majority correctly say that the CAO's inaction for 15 business days following receipt of the exceptions is an insufficient reason to treat the hearing officer's decision as final. I agree with this conclusion for several reasons including the simple fact that had the County intended the expiration of 15 days to be determinative, the Ordinance would have so stated. Lacking this statement and the obvious need of the CAO to fully consider labor problems in the context of other equally pressing prob-

lems, it is understandable why the County did not expressly provide that the hearing officer's decision was to become final if the CAO failed to act within 15 business days after the exceptions were filed.

The majority's recognition that the CAO should act in a positive fashion and that the Ordinance should not be construed as defining a jurisdictional limitations period does not, however, fully address the problem. Their decision ignores a manifest purpose of the Ordinance in promptly resolving unfair labor practice charges after the relevant facts have been established before a hearing officer.

San Diego County's labor relations ordinance is an attempt to provide a comprehensive procedure for the efficient resolution of labor disputes between the County and its employees. (Ordinance, art. I, § 2.) In addition to recognizing the rights of County employees to join and be represented by organizations of their choice, the Ordinance prescribes the process for investigating, deciding and implementing allegations of an unfair labor practice. (*Id.* art. VIII.) Consistent with the stated purposes of the Ordinance—to promote communication between the County and its employees and to enhance the County's relationship with its employees (*id.* art. I, § 2)—the Ordinance prescribes definite time periods within which decisions on allegations of unfair labor practices must be made. In general terms the Ordinance requires those decisions to be made promptly. For example, article VIII, section 10 requires the hearing officer to *promptly* decide the matters once the record has been completed. The time periods involved in this case also reflect the need for prompt action. It is clear those provisions do not anticipate that the CAO should be allowed to dilly-dally. Unless exceptions are filed with the CAO within 20 days after the decision of the hearing officer that decision stands and the parties are required to meet to develop the appropriate implementation procedure. (*Id.* art. VIII, § 11, subsec. (b)(1).) Where exceptions are filed the CAO *shall determine* the validity of those exceptions within 15 County business days. The Ordinance's concern with prompt action is reflected in the unambiguous phrase "shall determine" and in allowing the CAO 15 "business" days as contrasted with calendar days. Such language categorically directs the CAO to timely act. Inaction is not permitted because the CAO may harbor the personal belief—benign or otherwise—that County labor relations will be improved if the hearing officer's decision is ignored and the problem resolved by other factors including the employees' financial and emotional needs for other more satisfactory employment with a different employer.

The majority's solution to the problem of a "recalcitrant administrator" is to suggest that the affected employees file a petition for writ of mandate directing the CAO to act on the exceptions. This suggestion effectively admits

that the CAO will always be able to unfairly "buy time" before implementing a hearing officer's decision with which he disagrees, even if he has no legal basis for accepting the County's exceptions. Moreover, such a proposal places the affected employees in the position of having to sue the supposedly impartial arbiter who is charged with deciding an issue for or against them, hardly the preferred means for assuring objective decisionmaking.

The majority's proposal would not be nearly so objectionable if the procedures of article VIII were realistically a two-way street. It is clear, however, that the process is skewed in favor of the county where, following the filing of exceptions, the determinative decisionmaker is the administrative head of County government. It is difficult for me to believe that had the decision in this case been in the County's favor that the CAO would have been as dilatory as he was here. Where the County prevails, the CAO has no incentive to delay implementation of that decision or to reach a compromise solution. He will merely reject any exceptions filed by the affected employee(s) and order implementation. Delay is only in the County's interests if the hearing officer renders a decision adverse to the County. In such cases, not only are aggrieved employees left without a meaningful remedy even though they have complied with each step required by the Ordinance, but the purpose of the Ordinance itself is frustrated by the added and unnecessary costly delay of further litigation which disrupts the administrative process.

While I appreciate the need for the CAO to act in a thoughtful manner, which may necessitate a reasonable postponement of a decision following the filing of exceptions, I do not believe the Ordinance contemplates that any ensuing delay should be arbitrary or open ended. The ultimate purpose of the Ordinance is to improve employee relations by establishing a meaningful procedure to resolve labor disputes, such purpose is not served where inaction by a CAO has no reasonable basis, merely reflecting the lethargy of bureaucracy or the arrogance of delegated power. The purpose is similarly ill served by an interpretation of the Ordinance which creates seemingly unending obstacles to the resolution of legitimate disputes. When compliance with employee dispute resolution procedures becomes a nearly Sisyphean task, it breeds disrespect for the procedures and, ultimately, for the employer as well. Such a result, in the context of the public employer, has ramifications far beyond the employment relationship.

In my view, the best way to effectuate the purpose of the Ordinance and to protect the legitimate interests of all concerned parties is to allow the CAO to delay his action *provided* he has good cause to do so. Here the trial court was confronted with a difficult factual case in the context of uncertain legal standards. Although I believe the trial court correctly decided the legal issue, the factual issue justifying the CAO's delay was not sufficiently explored. In

fairness to the parties and because of the paucity of the evidence on this issue, I believe the proper procedure is to remand for a further hearing on whether there was sufficient good cause for the CAO to delay acting on the exceptions. I would therefore remand for further proceedings.