[Civ. No. 28107. Fourth Dist., Div. One. Aug. 30, 1983.]

McLAIN WESTERN #1, Plaintiff and Appellant, v.
COUNTY OF SAN DIEGO et al., Defendants and Respondents.

COUNSEL

Donnelly, Clark & Chase, John A. Donnelly, William M. Smiland and Theodore A. Chester, Jr., for Plaintiff and Appellant.

Joseph Kase, Jr., Acting County Counsel, Lloyd M. Harmon, Jr., Chief Deputy County Counsel, and Bruce W. Beach, Deputy County Counsel, for Defendants and Respondents.

OPINION

LEWIS, J.*—Plaintiff McLain Western #1 (McLain) appeals a judgment on the pleadings and a judgment on the merits favoring defendants County of San Diego, Fallbrook Union School District and Fallbrook Union High School District (collectively referred to as County). Fallbrook Union High School District has been dismissed from this appeal.

McLain is a limited partnership formed to develop Pala Mesa Country Club Villas, a two-phase luxury condominium complex. Phase I consists of 66 units; 46 one bedroom and 20 two bedroom, while Phase II consists of 70 units; 42 one bedroom and 28 two bedroom. The condominiums adjoin the Pala Mesa Golf and Tennis Resort and were designed primarily to attract

---

*Assigned by the Chairperson of the Judicial Council.

weekend or retirement home purchasers. However, leasing of the units was allowed and there were no covenants, conditions or restrictions barring residence by schoolage children.

Upon completion of Phase I, McLain sought a building permit for Phase II. At that time, the sales force which had been recruited for the total project was completing its work as to Phase I. The project had been financed and was accruing interests costs of $12,755.15 per month. Construction personnel had been hired for both phases. Total costs of delay on Phase II were approximately $30,000 per month. By May 1979, during the interim between Phases I and II, the School Facilities Act[1] had been enacted which allows certain conditions to be imposed on the issuance of a building permit where school overcrowding will result from the development. The purpose of the Act is to provide funding for interim school facilities to ease overcrowding caused by rapid residential development within each state school district.[2]

Pursuant to San Diego Ordinance No. 5120, enacted in accordance with the Act, the County conditioned the issuance of the Phase II permit to McLain upon payment of an interim facilities fee of $141,853.60.[3] McLain requested exemption from the fee on grounds Pala Mesa, by its nature, would not cause the need for interim school facilities.

The $141,853.60 fee was calculated by a formula developed by the San Diego County Department of Education. (a) Residential developments are given either single family, multifamily, or mobilehome classifications. The formula then uses census data, adjusted to reflect population characteristics within a specific school district to arrive at a pupil per unit yield factor for each classification. (b) Under the formula, Pala Mesa would be multifamily and average .586 pupils per unit. The per student cost multiplied by the pupil yield factor and the number of housing units determines the facilities fee to be assessed.

McLain, after payment under protest and exhaustion of administrative remedies, brought an action for return of the fee on the grounds the fee was unreasonable in view of Pala Mesa's characteristics as an adult recreational and retirement complex. The trial court held the proper method of challenging a condition within a permit is by a writ of mandamus proceeding. The court also held, assuming McLain's suit for refund were proper, the

---

[1] Government Code section 65970 et seq.

[2] Government Code section 65970.

[3] Of the total sum, $122,043.60 was paid to Fallbrook Union School District with the remaining $19,810.00 going to Fallbrook Union High School. Prior to trial, Fallbrook refunded $9,328.60 to reflect amendments requiring fees to be calculated on the cost of temporary facilities.

fee assessed was reasonably related to the need for interim schools caused by the Pala Mesa development.

██    McLain first contends the law should allow developers to challenge a condition in a building permit after compliance with the condition and receipt of the benefits bestowed by the permit. In *Pfeiffer* v. *City of La Mesa* (1977) 69 Cal.App.3d 74 [137 Cal.Rptr. 804], this court determined the proper method to challenge permit conditions is a mandamus proceeding. Compliance with the conditions waives the right to assert the invalidity of those conditions. (*Id.*, at p. 78.)

McLain concedes compliance with the facilities fee payment of $141,853.60 but asserts the payment was so coercive in nature as to make it involuntary. The delay of Pala Mesa Phase II pending a mandamus ruling would have costs of $30,000 per month. McLain was thus at an impasse with a large investment, unable to engage in the business of developing land. McLain asserts payment of a fee or tax in such circumstances is coercive and therefore involuntary. Thus, recovery should be allowed. (See *Newport Bldg. Corp.* v. *City of Santa Ana* (1962) 210 Cal.App.2d 771 [26 Cal.Rptr. 797]; *Flynn* v. *San Francisco* (1941) 18 Cal.2d 210 [115 P.2d 3], 55 Cal.Jur.3d 315.)

The County asserts McLain had an adequate and expeditious judicial remedy in challenging the fee condition by mandamus proceeding, and that once the developer voluntarily accepts the condition by payment and receives the benefits of the permit he should be barred from later challenging the validity of the permit condition. (See *Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110 [109 Cal.Rptr. 799, 514 P.2d 111]; *County of Imperial* v. *McDougal* (1977) 19 Cal.3d 505 [138 Cal.Rptr. 472, 564 P.2d 14].)

Ordinarily, the developer will not be permitted to obtain the benefit of going ahead with construction and subsequently litigating the validity of one of the conditions of the permit. There are critical distinctions from tax cases where the taxpayer may or must pay and sue for refund. The taxpayer does not pay the tax to obtain the permission of the government to go ahead with a project, make a sale, or realize a gain. A tax is imposed on an event, condition, or occurrence that exists or has taken place, and at the point in time the tax is imposed, the taxpayer has no further ability to make an election that the tax not be due. In the case of a condition of a permit, whether by payment of a fee, construction of offsite improvements, dedication, or otherwise, the applicant has the ability to elect to decline the benefits of the permit, and the fee, construction or dedication are not required. The County requires and is entitled to certainty in its fiscal affairs and budget procedures, and once the developer has accepted the benefits of

the permit by constructing the project he will not be permitted to sue for refund or cancellation or reimbursement of the cost of compliance with the permit conditions.

There is a further desirable effect of our continuing to adhere to the rule announced by this court in *Pfeiffer.* The decisions about fees to be imposed as conditions of permits are properly made by the County and the District, and the determination as to whether those decisions are lawful are most appropriately made under the standards and procedures applicable to a petition for mandamus rather than a suit at law potentially involving a jury trial.

The next question is whether there are any exceptions to this rule. There are instances where the decision to proceed with a project has been made, commitments have been made, and costs have been incurred, all of which are in practice irrevocable, but permits will be obtained in phases as the project progresses. Where new law imposes a fee condition on one of the subsequent permits under circumstances where even the time necessary to challenge the legality of the fee by petition for mandamus is economically impractical, there is in reality no opportunity for an election to not obtain the subsequent permit, and the payment of the fee is not truly voluntary. Under such limited circumstances the developer should not be required to adhere to the general rule and should be permitted to pay the fee under protest and sue for refund. This is such a case.

■ We now address the question of reasonableness of the County action.

McLain does not contest the general validity of Fallbrook's method of fee calculation, only its reasonableness as applied to the Pala Mesa development. Accordingly, the court's review is confined to the specific application in question.

McLain contends the fee imposed was unreasonable considering Pala Mesa's minimal impact on the community need for interim schools. The entire development, Phase I and II has produced a total of 3 children who have attended Fallbrook District Schools.[4] Thus, the County applies the Act as a general revenue raising measure contrary to the purpose of the Act.

McLain asserts, considering Pala Mesa's character as an adult recreational and retirement complex, it is highly unlikely Pala Mesa Phase II will generate anywhere near the pupil yield factor of .586 pupils per unit used by Fallbrook as an average in determining the facilities fee. The County

---

[4] Of those that attended, two were for relatively short periods of time.

asserts it is the overall development of land within the school district which mandates the need for schools. It is not unreasonable to consider the growth of the area, present and future, in determining the need for schools caused by land development. (See *Norsco Enterprises* v. *City of Fremont* (1976) 54 Cal.App.3d 488 [126 Cal.Rptr. 659]; *Georgia-Pacific Corp.* v. *California Coastal Com.* (1982) 132 Cal.App.3d 678 [183 Cal.Rptr. 395].)

Government Code section 65974 states the requirements of any ordinance enacted pursuant to the School Facilities Act. Section 65974 states in pertinent part: "(d) The location and amount of land to be dedicated or the amount of fees to be paid, or both, shall bear a reasonable relationship and will be limited to the needs of the community for *interim* elementary or high school facilities and shall be reasonably related and limited to the need for *schools caused by the development;* provided, the fees shall not exceed the amount necessary to pay five annual lease payments for the *interim facilities.*" (Italics added.)

The County cites *Associated Home Builders etc., Inc.* v. *City of Walnut Creek* (1971) 4 Cal.3d 633 [94 Cal.Rptr. 630, 484 P.2d 606, 43 A.L.R.3d 847], where the validity of action under the park land dedication requirements of Government Code section 66477 were in question. The Supreme Court determined there was no reason to hold the request of park land dedication as being justified "only upon the ground that the particular subdivider upon whom an exaction has been imposed will, *solely* by the development of his subdivision, increase the need for recreational facilities to such an extent that additional land for such facilities will be required." (Italics added 4 Cal.3d at p. 640.)

Analogies to cases discussing the park dedication requirements of Government Code section 66477 are an improper method of determining the validity of action under Government Code section 65974, subdivision (d). The School Facilities Act deals with alleviating crowded classroom conditions resulting from sudden residential development, not the developer's desire for optimal commercial acreage at the cost of the general public need for park lands. All development diminishes acreage available for park and recreation areas thus justifying a finding which requires a minimal relationship between the need for parks caused by the development and the amount of land it is required to dedicate. Here, a much more defined need exists; the need for *interim* school facilities when sudden *residential* development causes overcrowded classroom conditions. We deal not with a general and broad public welfare measure, but a narrow and specific one. Government Code section 65974, subdivision (d) requires the fee to be reasonable in relation to the need for interim schools *caused by the development.* Any broad application of the term "need for schools" in determining the fee

imposed on a specific development would be contrary to the purpose of the Act. Therefore, if the fee was reasonable it was so because Pala Mesa Phase II caused a need for interim schools.

McLain's marketing plan was aimed at the adult recreational market, yet its sales agreements did not prohibit leasing of the units or residence by children. While the size and price of the units may have made purchase by families with children within the five-year period projected by the Act less probable, the leasing of a substantial number of the units to such families is certainly a reasonable probability. The fact hindsight has shown Pala Mesa Phase II's pupil yield factor to be far less than the .586 student per unit projected as an average for multifamily developments by Fallbrook's formula does not make the County's assessment unreasonable in relation to the students Pala Mesa Phase II may have generated during the five-year period had residence been taken by families with children. Denial of exemption was reasonable and in accord with the purposes of the Act.

The judgment is affirmed.

Cologne, Acting P. J., and Wiener, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 10, 1983.