[Civ. No. 30858. Fourth Dist., Div. Three. Mar. 26, 1985.]

LAGUNA VILLAGE, INC., Plaintiff and Appellant, v.
COUNTY OF ORANGE et al., Defendants and Respondents.

COUNSEL

Kadison, Pfaelzer, Woodard, Quinn & Rossi, Paul B. George and J. David Oswalt for Plaintiff and Appellant.

Adrian Kuyper, County Counsel, Donald H. Rubin, Deputy County Counsel, Rutan & Tucker, David C. Larsen and M. Toni Perry for Defendants and Respondents.

OPINION

**SONENSHINE, J.**—Laguna Village, Inc., a real estate developer, appeals an order granting summary judgment against it and in favor of the County

of Orange and Saddleback Unified School District. Laguna contends a county ordinance requiring the payment of fees prior to issuance of a building permit is in violation of the school facilities act. (Gov. Code, § 65970 et seq.)[1]

In April 1978 the county approved Laguna's tentative map and conditional use permit. In July it adopted ordinance 3071, pursuant to the school facilities act, requiring payment of interim school facilities fees prior to issuance of a building permit in attendance areas found to be overcrowded.

Saddleback, in January 1980, requested building permits for its district be conditioned upon payment of these fees. In February 1980, Laguna was granted a two-year extension on its tentative map. By resolution in June, the county adopted Saddleback's findings of overcrowding and made the ordinances, conditioning the issuance of building permits upon payment of fees, applicable to the Saddleback district. Laguna was refused a building permit unless it would agree to pay those fees. Payment was made under protest and in November, Laguna filed the underlying action for declaratory relief and rescission of its fee agreement with the school district.

## WAIVER

Saddleback and the county urge us to find Laguna has waived its right to contest the condition attached to issuance of its building permit. They cite *Pfeiffer* v. *City of La Mesa* (1977) 69 Cal.App.3d 74 [137 Cal.Rptr. 804] for the proposition Code of Civil Procedure section 1094.5 provides the only remedial path available to Laguna. ■ "It is fundamental that a landowner who accepts a building permit and complies with its conditions waives the right to assert the invalidity of the conditions and sue the issuing public entity . . . ." (*Id.*, at p. 78.)

Laguna concedes this general rule but contends it comes within the exception outlined in *McLain Western #1* v. *County of San Diego* (1983) 146 Cal.App.3d 772 [194 Cal.Rptr. 594]. The *McLain* plaintiff was midway in a two-phase condominium development. After completing phase I and just prior to application for the building permit for phase II, an ordinance similar to 3071 was passed, conditioning the issuance of building permits upon payment of interim school facilities fees. Plaintiff made payment under protest and brought an action for return of the fees. The court reiterated the *Pfeiffer* rule, noting "the applicant has the ability to elect to decline the benefits of the permit, and the fee, construction or dedication are not required. The County requires and is entitled to certainty in its fiscal affairs

---

[1]All section references are to the Government Code unless otherwise specified.

and budget procedures, and once the developer has accepted the benefits of the permit by constructing the project he will not be permitted to sue for refund or cancellation or reimbursement of the cost of compliance with the permit conditions." (*Id.*, at pp. 776-777.) "The decisions about fees to be imposed as conditions of permits are properly made by the County and the District, and the determination as to whether those decisions are lawful are most appropriately made under the standards and procedures applicable to a petition for mandamus . . . ." (*Ibid.*)

The court then addressed a possible exception to the general rule. "There are instances where the decision to proceed with a project has been made, commitments have been made, and costs have been incurred, all of which are in practice irrevocable, but permits will be obtained in phases as the project progresses. Where new law imposes a fee condition on one of the subsequent permits under circumstances where even the time necessary to challenge the legality of the fee by petition for mandamus is economically impractical, there is in reality no opportunity for an election . . . . Under such limited circumstances the developer should not be required to adhere to the general rule . . . ." (*Id.*, at p. 777.)

Plaintiff in *McLain* had completed phase I and its sales and construction crews were the same for phase II. It was accruing interest costs of $12,000 per month and labor costs if delayed would have been approximately $30,000 per month.

Laguna's declaration alleged it was committed for the necessary loans and would lose $3,000 to $15,000 per day in additional interest. The declaration was uncontradicted. Thus, Laguna would have accrued interest payable of $90,000 to $450,000 per month, considerably higher than in *McLain*. For this reason, and in the interests of judicial economy, we address the merits of this action.[2]

### DISCUSSION

The school facilities act was added by statute in 1977. The Legislature declared "[a]dequate school facilities should be available for children residing in new residential developments" and as new developments cause overcrowding which cannot be remedied within a reasonable time with available funds, "new and improved methods of financing for interim school facilities . . . are needed in California." (§ 65970.) When a school district makes

---

[2]This is no doubt the reason the *McLain* court heard the matter, promptly affirming denial of an exemption to the developer. The issue there was also one of first impression—the reasonableness of the fee imposed (*as a condition of the building permit*) because of the recreational and retirement character of the development.

necessary findings regarding overcrowding, it notifies the county; if the county concurs, it "shall not approve an ordinance rezoning property to a residential use, grant a discretionary permit for residential use, or approve a tentative subdivision map for residential purposes, within such area, unless [it] makes one of the following findings: [¶] (1) That an ordinance pursuant to Section 65974 has been adopted, or [¶] (2) That there are specific overriding . . . factors which . . . [would justify] the approval of a residential development otherwise subject to Section 65974." (§ 65972.)

Section 65974 provides: "For the purpose of establishing an interim method of providing classroom facilities where overcrowded conditions exist . . . [a] county may, by ordinance, require the dedication of land, the payment of fees in lieu thereof, or a combination of both, for classroom and related facilities . . . as a condition to the approval of a residential development . . . ." Where payment of fees is required, "the payment shall be made at the time the building permit is issued or at a later time as may be specified in the ordinance." (*Ibid.*)

County ordinance No. 3071 was enacted in July 1978. Section 7-9-603, entitled "Fees Imposed," provided: "No building permits shall be issued for any residential development in any attendance area to which this article is applicable until an agreement for the payment of the fees set forth herein has been received by the county."

Following receipt of the requisite findings by Saddleback in January 1980, the board of supervisors in June passed resolution 80-913, finding "imposition of fees in accordance with Ordinances Nos. 3071 and 3150 is consistent with the Orange County General Plan," concurring in the Saddleback School Board findings, and making Ordinances Nos. 3071 and 3150 applicable to the attendance area of the school.

I

Laguna contends the ordinances are invalid because they do not comply with sections 65972 and 65974. In particular Laguna insists "approval of a residential development," as used in section 65974, includes only the actions listed in section 65972, namely, approval of a rezoning ordinance or tentative map and the grant of a discretionary permit for residential use. Thus, it argues, payment of fees may not be a condition to the grant of a building permit. We disagree.

Logic, if not common sense, dictates "approval of a residential development" includes *all* necessary approvals, including approval of a building permit. If the ordinances are enacted, as here, *before* a particular

school area becomes overcrowded, the enabling ordinance is in effect long before section 65972 becomes relevant as to a *particular attendance area.* In that instance we see no reason to arbitrarily restrict "approval" to the three occasions mentioned in section 65972.

Laguna argues because the fee payment must be made at the time the building permit is issued, it must have been *imposed* at an earlier time. However, we feel the Legislature logically chose this stage as representing the final approval necessary to completion of the project. Any payment made prior to this point would be an unnecessary and unrefundable expenditure in the event the development was aborted. Merely because payment is due when the permit is issued does not preclude imposing liability for that payment as a condition precedent to granting the permit.

■ We agree with the court in *McLain Western #1* v. *County of San Diego, supra,* 146 Cal.App.3d 772. "[T]he School Facilities Act . . . allows certain conditions to be imposed on the issuance of a *building permit* where school overcrowding will result from the development. The purpose of the Act is to provide funding for interim school facilities to ease over-crowding caused by rapid residential development within each state school district." (*Id.,* at p. 775, italics added, fns. omitted.)

II

■ Section 65974 may indeed have been modeled after section 66477 (dealing with parkland dedication).[3] This does *not* mean approval of a residential development, as used in section 65974, is restricted to the enumer-ated actions in section 65972. The court in *Trent Meredith, Inc.* v. *City of Oxnard* (1981) 114 Cal.App.3d 317 [170 Cal.Rptr. 685] compared the two sections, *not* to construe the meaning of "approval" but to determine the imposition of school fees "is as appropriate a subject for the exercise of the police power as the subject of inadequate open space . . . ." (*Id.,* at p. 326.) Laguna fails to note *Trent* also addressed a challenge to payment of school fees "as a precondition to issuance of a *building permit.*" (*Id.,* at p. 321, italics added.) Quite properly, neither party and none of the amicus curiae briefs challenged the ordinance's compliance with the school facili-ties act for this reason. (*Id.,* at p. 320.) The only issue was whether the fees were a "special tax"; the court determined they were not.

Of interest is the similar wording of the ordinance in *Trent:* ". . . no decision-making body shall approve a residential development unless . . .

---

[3]The section provides the government body may, by ordinance, require park fees as a condition to approval of a subdivision map.

the school district has entered into an agreement with the applicant [for mitigation] . . . [or if] the application is for a building permit . . . the applicant has paid the school fees . . . ." (*Id.*, at p. 333.) The *Trent* ordinance further defines "Approve a Residential Development" as follows: "(a) to grant a *building permit;* (b) to approve or recommend approval of a tentative or final parcel map for a subdivision of land, or (c) to grant or recommend the granting of a variance, special use permit or planned development permit." (*Id.*, at p. 332, italics added.)

Similarly in *McLain Western #1* v. *County of San Diego, supra,* 146 Cal.App.3d 772, plaintiff challenged payment of school fees as a condition to issuance of a *building permit.* Again the plaintiff did not contest the general validity of the ordinance, but attacked the reasonableness of the fee amount.

Laguna suggests passage of section 65961 in 1982, albeit prospective only, clarifies the Legislature's intent that a building permit cannot be conditioned upon the payment of school fees. The section provides in relevant part: "Notwithstanding any other provision of law, upon approval or conditional approval of a tentative map . . . during the five year period following recordation . . . county shall not require as a condition to the issuance of any building permit . . . conformance with or the performance of any conditions that the city or county could have lawfully imposed as a condition to the previously approved tentative or parcel map. . . ."

First, as noted, the section applies prospectively only. Second, Laguna's tentative tract map was approved in April, 1978, *prior* to passage of the county ordinances implementing the act (July 1978), the school district's required findings of overcrowding (Jan. 1980), and the county's resultant resolution implementing the ordinances pursuant to those findings (June 1980). Until this time the county could not lawfully have imposed the fees. Third, the section itself recognizes an exception where "[t]he condition is required in order to comply with state or federal law."

### III

Laguna complains the county had no authority to "impose additional conditions on [it] after approval of the Tentative Map and the CUP [and] they are invalid under the Subdivision Map Act." We must again disagree. The conditions were *not* imposed pursuant to the Subdivision Map Act, but in accordance with other statutory authority.

Laguna relies on *Youngblood* v. *Board of Supervisors* (1978) 22 Cal.3d 644 [150 Cal.Rptr. 242, 586 P.2d 556]. "Approval of the final map thus

becomes a ministerial act once the appropriate officials certify that it is in substantial compliance with the previously approved tentative map." (*Id.*, at p. 656.) However, Laguna cannot extrapolate this statement to encompass a prohibition against subsequent conditions attached to a building permit. *Youngblood* is not a permit case. The court addressed only the necessity of approving a final plan which conformed to the tentative and whose conditions had been performed.

In *Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785 [132 Cal.Rptr. 386, 553 P.2d 546], plaintiff performed substantial work on a large project and received approval of its final map. Newly enacted legislation required a permit from the coastal commission for any development within its zone. Avco sought an exemption, claiming it had a vested right to complete development. While Laguna insists it is not proceeding on a vested rights theory, the result is the same. Avco, like Laguna, had its final map and insisted issuance of the building permit was "merely a ministerial act . . . ." (*Id.*, at p. 795.)

However, the court stated, "The contention that Avco was entitled to a building permit because the county would have been compelled to issue it upon mere application has no merit. The Orange County Building Code (§ 302(a)) provides that a building permit may not issue unless the plans conform not only to the structural requirements of the code but to 'other pertinent laws *and ordinances.*' This provision codifies the general rule that a builder must comply with the laws which are in effect at the time a building permit is issued, including the laws which were enacted *after* application for the permit. [Citations.] A landowner which has not even *applied* for a permit cannot be in a better position merely because it had previously received permission to subdivide its property and made certain improvements on the land." (*Ibid.*, fns. omitted, italics added.)

Laguna also relies on *El Patio* v. *Permanent Rent Control Bd.* (1980) 110 Cal.App.3d 915 [168 Cal.Rptr. 276]. There the plaintiff held tentative subdivision approval for condominium conversion of an apartment building. A subsequent local charter amendment required a permit for removal of controlled rental units from the housing market. The city attempted to attach this requirement to an extension of the tentative map. Following *Youngblood,* the court held "the City could not impose additional conditions after the conditional approval of the tentative map." (*Id.*, at p. 927.) The city was acting contrary to the provisions of the Subdivision Map Act. However, the court specifically distinguished the building permit cases. "If the City were asked to issue a building permit, the issues in this case would be different." (*Ibid.*) "Accordingly, our conclusion is extremely narrow in scope . . . . Nothing herein should be construed as a determination that the

approval of a tentative map would allow a property owner to proceed without obtaining *other permits* which the City might impose if it were not relying upon the Subdivision Map Act." (*Ibid.*)

In *Santa Monica Pines, Ltd.* v. *Rent Control Board* (1984) 35 Cal.3d 858 [201 Cal.Rptr. 593, 679 P.2d 27], the plaintiff had received its final subdivision map approval *after* enactment of a charter amendment requiring a landlord to obtain a permit before removing controlled rental units from the market. Thus, "[t]he [subsequent] ordinance's requirement of a removal permit [was] not a 'new condition' imposed on a subdivision in violation of *Youngblood;* it is not a restriction on the right to subdivide at all. Nor did approval of the tentative subdivision map imply that removal of the units from the rental market was also 'approved.'" (*Id.,* at p. 866, fn. 6.) The plaintiff was denied a vested right exemption.[4] The court upheld the denial because "an 'insubstantial' amount . . . was actually expended in reliance on the map approval" (*id.,* at p. 864) [which expenditures] "were clearly a 'calculated risk' . . . ." (*Id.,* at p. 867.)[5]

The *Santa Monica* court noted the plaintiffs still had the "authority to subdivide their apartment building as provided in the approved tentative map, that is, to sell fee interests in single apartment units. [They merely did not acquire] the further right to transfer interests which are free of an intervening general regulation—the requirement that any owner of a 'controlled rental unit' obtain a permit before removing it from the rental market. [¶] But it is well established that the rights which may 'vest' through reliance on a government permit are no greater than those specifically granted by the permit itself." (*Id.,* at pp. 865-866.)

A similar after-enacted ordinance was upheld in *People* v. *H & H Properties* (1984) 154 Cal.App.3d 894 [201 Cal.Rptr. 687], as modified at 155 Cal.App.3d 1049c. H & H had received both tentative and final map approvals and its rights had fully vested. The ordinance "did not intervene and constitute an additional condition precedent to final approval . . . [but] merely requires H & H, and all developers . . . interested in converting their apartments to condominiums, to satisfy certain [then] existing requirements . . . ." (*Id.,* at p. 900.)

---

[4]The ordinance provided for exemption where one had "secured the last governmental approval necessary to the performance of the desired thing, and, in good faith reliance on that approval, must have performed substantial work or incurred substantial liabilities in furtherance thereof." (*Id.,* at p. 863, fn. 3.)

[5]We question whether Laguna did not also take a calculated risk. The ordinance was passed in 1978 and duly published in the county. The requisite findings by the Saddleback District could have arisen at *any* time afterward.

## CONCLUSION

The county ordinances and resolution implementing the school facilities act were not in violation thereof by requiring the payment of interim school fees as a condition precedent to the issuance of a building permit. Nor did the county's approval of Laguna's tentative tract map preclude it from imposing those fees.

The judgment is affirmed. Respondents to receive costs.

Trotter, P. J., and Crosby, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 5, 1985.