[No. A049006. First Dist., Div. Three. June 28, 1991.]

COUNTY OF SONOMA, Plaintiff and Respondent, v.
ROBERT REX et al., Defendants and Appellants.

## COUNSEL

Monroe, Flitner & Nellessen and John D. Flitner for Defendants and Appellants.

James P. Botz, County Counsel, and Sue A. Gallagher, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**MERRILL, J.**—Robert Rex and P. J. Rex appeal from the judgment following a court trial declaring their operation of a bed and breakfast inn to be in violation of Sonoma County (hereinafter County) zoning ordinances and permanently enjoining them from maintaining a bed and breakfast inn on their property without a use permit. Appellants contend the trial court was in error in failing to find that the County should be estopped from continuing with abatement proceedings, and in failing to determine that their bed and breakfast inn was a legal nonconforming use, without a permit. We find no merit in their contentions.

### FACTUAL AND PROCEDURAL BACKGROUND

At the court trial on the County's action[1] for declaratory and injunctive relief, the evidence showed that the Rexes own approximately 17 acres of land in Glen Ellen which is zoned "A-1" or "primary agricultural." The property was zoned A-1 when the Rexes purchased it in 1982 and still had the same zoning classification at the time of trial.

Sonoma County's zoning ordinance lists the uses allowed in a particular zone. A use which is not listed for a zone is not permitted. Areas zoned as A-1 did not include the operation of a commercial bed and breakfast inn among the permitted uses. Robert Rex testified that before purchasing the property he was aware of its A-1 zoning.

The Rexes initially intended to start a winery on the property and to use it as their residence. However, they discovered the soil was too rocky to allow the planting of a vineyard. Robert Rex stated that he telephoned the County planning department and asked what was required to operate a bed and breakfast inn out of his home. An unidentified planning department employee told him that the County had no regulations governing bed and breakfast inns, that he only needed to pay an occupancy tax, file a fictitious name statement if applicable and comply with county public health regulations. In October 1982, the Rexes began operation of a bed and breakfast inn on their property.

---

[1]The Rexes' cross-complaint in the instant action for inverse condemnation and deprivation of civil rights was dismissed without prejudice on their own motion.

In June 1983, as a result of complaints from neighbors, Debra Watts, a County zoning enforcement officer, investigated the existence of a bed and breakfast inn on the Rex property. She then wrote the Rexes a letter informing them that the operation of the inn was not a permitted use in their A-1 zoned area and that their options were to either cease operation, or have the property rezoned and then obtain a use permit. Thereafter, in her discussions with the Rexes, Watts informed them that she would forestall an abatement action in light of the County's imminent adoption of an ordinance regulating the operation of bed and breakfast inns. Watts believed the new ordinance would permit operation of a bed and breakfast inn in an A-1 zoned area with a use permit.

Sonoma County Supervisor Bob Adams met with the Rexes at their request shortly after Watts's investigation. He offered little guidance to remedy the situation, simply repeating what Watts had told them about the impending adoption of the bed and breakfast ordinance. Robert Rex testified that Augustus Latta, a planner with the County, informed them the County planning department had previously advised citizens that use permits were unnecessary for the operation of small inns. However, Latta told the Rexes that the new ordinance would require use permits and that the use permit requirement would apply to the "ag zone." Robert Rex also testified that Latta discussed with them the legality of the inn under the County zoning ordinance's definition of "family,"[2] which included three roomers or boarders.

In the fall of 1983 the Rexes attended a series of public meetings on the adoption of the bed and breakfast ordinance. One of the County planners in attendance said that the status of inns operating prior to the adoption of the ordinance was unclear. Robert Rex testified that in response to this statement several inn owners asserted that they had been told by the planning department that permits were unnecessary.

In November 1984, the board of supervisors adopted the bed and breakfast ordinance, which, among other things, permitted the operation of bed and breakfast inns in A-1 zoning with a use permit. Rather than apply for a use permit, the Rexes attempted to obtain a determination from the County that they could operate their inn under the use permit exemption for families in the zoning ordinance. Robert Rex recalled a brief discussion of this possibility with Jim Olmsted, a senior planner for the County. Olmsted responded by a letter dated January 16, 1985, explaining that while the Rexes' primary

---

[2]"Family" was defined in part as follows in section 26-10 of the Sonoma County Code: "A single and separate living unit, consisting of either: [¶] (a) One (1) person, or two (2) or more persons related by blood, marriage, or adoption or by legal guardianship pursuant to court order; plus necessary domestic servants and not more than three (3) roomers or boarders."

dwelling could house three boarders in three rooms under the family definition, "[y]ou may not conduct a business in the dwelling unless you comply with the home occupation criteria or obtain an approved use permit for a bed and breakfast inn." In February 1985, in an informal discussion on the conflict between the definitions of family and bed and breakfast inns in the zoning ordinance, the board of zoning adjustments concurred with the opinions expressed by Olmsted in his letter. The Rexes were present at this meeting.

There is no evidence in the record that the Rexes limited the number of bed and breakfast guests in their home to three persons. On the contrary, the Rexes testified that they rented three *rooms* in their home to overnight guests.

Evidence was presented that the Rexes continued operation of a bed and breakfast inn on their property without a use permit. Even after the adoption of the ordinance and the January 1985 Olmsted letter, they advertised in the yellow pages and in a Sonoma Valley Visitors Bureau brochure as a commercial bed and breakfast inn.

The Rexes also testified that in reliance on the County's assurances of the legality of their inn, they spent approximately $95,000 between 1982 and 1986 for improvements to their property.

In August 1986, the board of zoning adjustments issued a resolution ordering the Rexes to abate the illegal use of their property as a commercial bed and breakfast inn. The matter was appealed to the board of supervisors, which confirmed the abatement order.

The trial court found insufficient evidence to equitably estop the County from proceeding with abatement. The court found further that the Rexes' use of the property was an illegal nonconforming use as it had been illegal from the outset.

### EQUITABLE ESTOPPEL

The Rexes first contend that the trial court failed to give appropriate weight to evidence indicating the County should be estopped from going forward with abatement proceedings. The Rexes point to evidence showing that prior to the adoption of the bed and breakfast ordinance they relied on the following: statements of the unnamed planning department employee that no permit was required for a bed and breakfast inn, Latta's advice that use permits were unnecessary for the operation of small inns, and confirmation from an unidentified County planner that many inn owners were told of

the lack of need for a permit. After the bed and breakfast ordinance was adopted, the Rexes contend that Olmsted's letter to them provided adequate assurance of the continued legality of their inn under the use permit exemptions for families. The Rexes submit that the County consistently maintained and gave assurances of the legality of their inn. We have determined substantial evidence supports the trial court's finding that the equitable estoppel doctrine is inapplicable to this case.

■ In general, the four requisite elements for application of the doctrine of equitable estoppel are: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245].)

In *City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 496-497 [91 Cal.Rptr. 23, 476 P.2d 423], our Supreme Court held that "[t]he government may be bound by an equitable estoppel in the same manner as a private party when the elements requisite to such an estoppel against a private party are present and, in the considered view of a court of equity, the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel." (*Ibid.*) However, an estoppel will not be applied against the government where it will "effectively nullify 'a strong rule of policy, adopted for the benefit of the public, . . .' [Citation.]" (*Id.*, at p. 493.)

■ Courts will invoke the equitable estoppel doctrine against the government in rare circumstances. When considering the application of the doctrine with respect to zoning laws and permits, courts must balance the individual's interest against the interest of the public and the community in preserving the community patterns established by zoning laws. (*Pettitt* v. *City of Fresno* (1973) 34 Cal.App.3d 813, 820 [110 Cal.Rptr. 262], app. dism. (1974) 419 U.S. 810 [42 L.Ed.2d 37, 95 S.Ct. 24].) "All the residents of the community have a protectable property and personal interest in maintaining the character of the area as established by comprehensive and carefully considered zoning plans in order to promote the orderly physical development of the district and the city and to prevent the property of one person from being damaged by the use of neighboring property in a manner not compatible with the general location of the two parcels. [Citation.] These protectable interests further manifest themselves in the preservation of land values, in esthetic considerations and in the desire to increase safety by lowering traffic volume. To hold that the City can be estopped would not

punish the City but it would assuredly injure the area residents, who in no way can be held responsible for the City's mistake." (*Id.*, at p. 823.) The *Pettitt* court analyzed that the public interest will generally outweigh any injustice to the individual which may result from "relying upon an *invalid* permit to build issued in violation of zoning laws." (*Id.*, at p. 820.)

■ The existence of an estoppel is a factual question for the trial court, whose determination will be upheld so long as it is supported by substantial evidence. (*Driscoll* v. *City of Los Angeles, supra,* 67 Cal.2d at p. 305.) ■ In the instant case, substantial evidence supports the court's findings that the requisite elements for application of equitable estoppel were not present. As the trial court noted, at no time were the Rexes unaware of the true facts. Prior to the passage of the new ordinance, the Rexes knew that the operation of an inn in their A-1 zoned property was not a permitted use.

Their purported reliance upon the assurances of another owner or an unnamed planning department employee that permits were unnecessary is simply unreasonable. Further, even if they presumed the County allowed operation of bed and breakfast inns without permits, as early as June 1983, by virtue of Watts's letter, the Rexes were aware that the County considered their operation of the inn a violation of the zoning laws. Even after Watts informed them that abatement proceedings would be forestalled because of the impending passage of the bed and breakfast ordinance, at a minimum the Rexes were on notice of the uncertain legality of their operation. After passage of the ordinance, the Rexes were aware that they could legally operate an inn in an A-1 zoned area *with a use permit.* While the Rexes were also aware of the roomer-boarder provision in the family definition, at no time did the County inform them that their operation of a bed and breakfast inn fell under such provision. To the contrary, Olmsted's January 1985 letter made it plain that operation of a bed and breakfast inn was a business and would not be tolerated without a use permit. In our view, substantial evidence supports the court's finding that an estoppel did not exist.

Moreover, we concur with the court's legal determination that on balance, the equities did not favor invoking the doctrine to estop the County. The record clearly indicates that the court balanced the interests of the surrounding property owners and the inequities to them if the County were estopped as against any injustice which the Rexes may have suffered. The court noted the entitlement of these property owners in maintaining the character of the property as A-1 zoned land. The community interest in preserving the "primary agricultural" zoning in the area outweighs any individual interest in

establishing a business. This is particularly true where the individual is not barred from seeking the issuance of a use permit to operate the business.

### LEGALITY OF NONCONFORMING USE

The Rexes next argue that the trial court failed to give appropriate weight to evidence indicating the legality of their operation of the inn as a nonconforming use. They maintain that prior to the adoption of the bed and breakfast ordinance, the operation of the inn was lawful under the family definition in the zoning ordinance and should therefore continue as a nonconforming use. The evidence does not support this argument.

A nonconforming use is one which lawfully existed prior to the effective date of the zoning restriction and which continued thereafter in nonconformity with the ordinance. (*Hill* v. *City of Manhattan Beach* (1971) 6 Cal.3d 279, 285 [98 Cal.Rptr. 785, 491 P.2d 369].) The bed and breakfast operation here did not lawfully exist under the family definition prior to the 1984 adoption of the bed and breakfast ordinance. The roomer-boarder provision in the family exemption connotes tenancy for longer periods than the one- or two-night stay of guests at a bed and breakfast inn. As the Rexes testified, they rented their rooms to couples for one or two nights on weekends. An overnight guest contrasts sharply with a roomer or boarder as set forth in the definition of family in the zoning code. Even Robert Rex recognized the distinction between a roomer or boarder and a guest at a commercial bed and breakfast inn when he stated "[a] boarder . . . would be there every day . . . ." In fact, the Rexes made the express choice not to rent out rooms to a full-time tenant or roomer.

Clearly, a roomer or boarder would afford an area a great deal more continuity and stability than the transient overnight guest. Substantial evidence supports the court's finding that the bed and breakfast inn was not a legal nonconforming use.

### FUNDAMENTAL VESTED RIGHT

Finally, the Rexes submit continued operation of the bed and breakfast inn should be permitted under the theory that they have acquired a fundamental vested right thereto.[3] Where a property owner has

---

[3]The fundamental-vested-rights theory was not presented at trial and the Rexes would not generally be permitted for the first time on appeal to change the theory upon which the case was tried. (*Curcio* v. *Svanevik* (1984) 155 Cal.App.3d 955, 960 [202 Cal.Rptr. 499].) However, there is an exception to this rule where a question of law only is presented on the facts appearing in the record. (*Hale* v. *Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512].) We presume the Rexes raise this new theory on such basis.

"'. . . performed substantial work and incurred substantial liabilities in good faith reliance upon a permit issued by the government, he acquires a vested right to complete construction in accordance with the terms of the permit. [Citations.] . . .' [Citations.]" (*Russ Bldg. Partnership* v. *City and County of San Francisco* (1988) 44 Cal.3d 839, 845-846 [244 Cal.Rptr. 682, 750 P.2d 324], app. dism. *sub nom. Crocker National Bank et al.* v. *City and County of San Francisco* (1988) 488 U.S. 881 [102 L.Ed.2d 201, 109 S.Ct. 209].) The rule is founded upon the constitutional principle that property may not be taken without due process of law. (*Id.*, at p. 846.) On the uncontradicted facts presented to the trial court, the doctrine of fundamental vested rights has no application to the instant case.

In the first instance, the vested-rights theory fails as the Rexes obtained no permit for the operation of their inn. Moreover, while the Rexes maintain that they obtained "permission" from County to run the inn on the property, the evidence clearly supports the conclusion that any reliance upon this "permission" was not in good faith. The Watts letter, at a bare minimum, put the Rexes on the notice of the questionable legality of their inn in the eyes of the County. Further, the Olmsted letter confirmed that a bed and breakfast business could not be operated without a use permit. Additionally, "[a] vested right requires more than a good faith subjective belief that one has it." (*Russ Bldg. Partnership* v. *City and County of San Francisco, supra*, 44 Cal.3d at p. 853, citing *Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785, 797 [132 Cal.Rptr. 386, 553 P.2d 546], cert. den. and app. dism. (1977) 429 U.S. 1083 [51 L.Ed.2d 529, 97 S.Ct. 1089].) The Rexes' purported reliance upon statements of an unnamed County planning department employee over the telephone or statements made by a unnamed County planner at a meeting simply does not rise to the level of reasonable reliance.

The judgment is affirmed.

White, P. J., and Strankman, J., concurred.