[No. G013648. Fourth Dist., Div. Three. June 29, 1994.]

FERIDOUN REZAI, Plaintiff and Appellant, v.
CITY OF TUSTIN et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

444

446

**COUNSEL**

Joel M. Ward and Gregory B. Byberg for Plaintiff and Appellant.

Layman, Jones & Dye, Stanley R. Jones, Dina M. McKenna, Alevizon, Smith, Susson & Palafox and Robert L. Green for Defendants and Respondents.

**OPINION**

**WALLIN, J.**—Feridoun Rezai appeals the judgment entered against him on his causes of action against the City of Tustin and for him on his breach of contract cause of action against Orange Coast Title Company, contending the trial court erred by: (1) granting Tustin judgment on the pleadings; and (2) limiting damages in the judgment against Orange Coast to $102. We affirm.

In March 1989 after a public hearing, Tustin's planning commission granted Rezai a conditional use permit to construct an 11-unit apartment project. After the building permit was issued and construction began, Tustin received complaints from nearby residents that they had not received notice of the hearing. Tustin determined the list Rezai had submitted omitted several property owners who were entitled to notice.

Rezai had originally submitted a list to Tustin which he had personally checked for accuracy, but he failed to submit the addresses on gummed

labels as required. A Tustin employee directed him to Orange Coast, which sold the lists printed on proper labels. Rezai bought the list for $102 and took it to Tustin in its unopened brown envelope. Among the documents in the envelope was a receipt which contained a verification of correctness but limited liability to the price of the list.

Based on the complaints and the determination notice had been inadequate, Tustin revoked Rezai's building permit in March 1990. A properly noticed public hearing was held in April and the planning commission denied Rezai's application for another conditional use permit. Rezai appealed to the city council, which continued the matter twice to allow Rezai and the property owners to work out a compromise. In June a final hearing was held and the council approved a conditional use permit for the compromise plans which significantly scaled back the project.

In August, Rezai filed a claim with Tustin under Government Code section 910 for damages arising from the revocation of the original conditional use permit and building permit. Tustin rejected the claim in September and Rezai filed a suit for breach of contract, promissory estoppel, violation of statutes and ordinances, and declaratory relief. The trial court granted Tustin's motion for judgment on the pleadings.

I

Rezai contends the trial court erred by granting Tustin judgment on the pleadings. The court did so on the ground Rezai had not exhausted his administrative remedies because he failed to seek administrative mandamus before suing for damages.

Usually, "a proceeding [for a writ of administrative mandate] under Code of Civil Procedure section 1094.5 is the exclusive remedy for judicial review of the quasi-adjudicatory administrative action of the local-level agency. [Citation.] Unless a party seeks a declaration a statute or ordinance controlling development is facially unconstitutional as applied to all property governed and not to a particular parcel of land, an action for declaratory relief may not be had. [Citations.] An action for declaratory relief is not appropriate to review the validity of an administrative decision. [Citations.] Rather, the proper method to challenge the validity of conditions imposed on a building permit is administrative mandamus under Code of Civil Procedure section 1094.5. [Citations.] 'A landowner cannot challenge a condition imposed upon the granting of a permit after acquiescence in the condition by either specifically agreeing to the condition or failing to challenge its validity, and accepting the benefits afforded by the permit.'

[Citations.]" (*City of Santee* v. *Superior Court* (1991) 228 Cal.App.3d 713, 718 [279 Cal.Rptr. 22], fn. omitted; see also *County of Imperial* v. *McDougal* (1977) 19 Cal.3d 505, 510-511 [138 Cal.Rptr. 472, 564 P.2d 14]; *Rossco Holdings Inc.* v. *State of California* (1989) 212 Cal.App.3d 642, 654 [260 Cal.Rptr. 736]; *Pfeiffer* v. *City of La Mesa* (1977) 69 Cal.App.3d 74, 78 [137 Cal.Rptr. 804].)

The purpose behind the rule has been explained in cases limiting the availability of inverse condemnation proceedings when sufficient administrative remedies exist. (*Salton Bay Marina, Inc.* v. *Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 941-942 [218 Cal.Rptr. 839].) As noted in *Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266 [157 Cal.Rptr. 372, 598 P.2d 25] (overruled on other grounds in *First Lutheran Church* v. *Los Angeles County* (1987) 482 U.S. 304, 319 [96 L.Ed.2d 250, 266-267, 107 S.Ct. 2378]), "[U]tilization of an inverse condemnation remedy would have a chilling effect upon the exercise of police regulatory powers at a local level because the expenditure of public funds would be, to some extent, within the power of the judiciary. 'This threat of unanticipated financial liability will intimidate legislative bodies and will discourage the implementation of strict or innovative planning measures in favor of measures which are less stringent, more traditional, and fiscally safe.' [Citations.] [¶] '. . . Determining that a particular land-use control requires compensation is an appropriate function of the judiciary, whose function includes protection of individuals against excesses of government. But it seems a usurpation of legislative power for a court to force compensation. Invalidation, rather than forced compensation, would seem to be the more expedient means of remedying legislative excesses.' [Citations.]" (24 Cal.3d at p. 276.)

*Air Quality Products, Inc.* v. *State of California* (1979) 96 Cal.App.3d 340 [157 Cal.Rptr. 791], echoed that theme: "Compelling public policy relating to fiscal planning and the integrity of the public fisc dictates that a party who claims to be aggrieved by wrongful action of an administrative agency in licensing or otherwise authorizing the use of a particular product or service must be required to seek mandate to compel the agency to set aside its action and thus prevent injury before maintaining a damage action on the theory of inverse condemnation; meaningful governmental fiscal planning would be impossible and legislative control over appropriations emasculated if persons were permitted to simply stand by in the face of administrative action claimed to be unlawful and injurious and years later assert substantial monetary damages on the theory that the administrative action was a taking for public use. [Citations.]" (*Id.* at p. 352.)

*City of Santee* v. *Superior Court, supra,* 228 Cal.App.3d 713 was similar on its facts. The landowner accepted a permit which contained conditions

concerning industrial driveway curbing and a divider wall to mitigate complaints by surrounding landowners. The owner acquiesced to the conditions placed on the permit and did not seek administrative mandamus. The Court of Appeal issued a writ of mandate directing the trial court to enter judgment on the pleadings for the city, holding the failure to pursue administrative mandamus precluded injunctive and declaratory relief. (*Id.* at pp. 716-718.)

Similarly, in *Pfeiffer* v. *City of La Mesa, supra,* 69 Cal.App.3d 74, the court held the landowner could not comply with conditions requiring him to install a 54-inch storm drain as a condition of his permit and then sue the city for inverse condemnation damages. His proper remedy was to challenge the condition at the outset by way of administrative mandamus. (*Id.* at pp. 76, 78.) Rezai did the same thing here. He complied with the second conditional use permit which scaled back the apartment development, and then sought damages. He never pursued administrative mandamus to challenge the conditions.

■ Courts, including ours, have recognized an exception to the general rule. In *Laguna Village, Inc.* v. *County of Orange* (1985) 166 Cal.App.3d 125, 128 [212 Cal.Rptr. 267] we adopted the exception as it had first been announced in *McLain Western #1* v. *County of San Diego* (1983) 146 Cal.App.3d 772 [194 Cal.Rptr. 594]: "There are instances where the decision to proceed with a project has been made, commitments have been made, and costs have been incurred, all of which are in practice irrevocable, but permits will be obtained in phases as the project progresses. Where new law imposes a fee condition on one of the subsequent permits under circumstances where even the time necessary to challenge the legality of the fee by petition for mandamus is economically impractical, there is in reality no opportunity for an election. . . . Under such limited circumstances the developer should not be required to adhere to the general rule . . . ." (*Id.* at p. 777.)

■ Rezai's case does not involve a fee condition nor permits obtained in stages, as in *Laguna Village, Inc.* and *McLain Western #1.*[1] However, the analogy is apt. Rezai obtained his initial conditional use permit and embarked on substantial construction before his building permit and conditional use permit were revoked. The second conditional use permit imposed conditions that had not been part of the first permit.

Although the situations are similar, the exception to the rule requiring resort to administrative mandamus should not be applied here. First, in *Laguna Village, Inc.* and *McLain Western #1* the landowners apparently alleged that delaying the project to seek administrative mandamus would

---

[1]Indeed, Rezai has not relied upon them as authority.

cause them considerable financial loss. (*Laguna Village, Inc.* v. *County of Orange, supra,* 166 Cal.App.3d at p. 128; *McLain Western #1* v. *County of San Diego, supra,* 146 Cal.App.3d at pp. 777-778.) Here, Rezai alleged the delay occasioned by the revocation of the first permit caused him damage, but he did not allege "the time necessary to challenge the legality of the fee by petition for mandamus [was] economically impractical." (*McLain Western #1* v. *County of San Diego, supra,* 146 Cal.App.3d at p. 777; see also *Rossco Holdings Inc.* v. *State of California, supra,* 212 Cal.App.3d at pp. 659-660 [plaintiff failed to show administrative mandamus, alone or with inverse condemnation action, would not have provided adequate forum].)

Second, we do not believe the exception should be applied where the landowner does not seek the refund of a fee, but seeks damages arising from conditions restricting the development or requiring additional amenities. In the former circumstance, the amount in controversy is fixed and does not vary based upon any decision by the administrative body or construction of the project. But in the latter, the claimed damages are uncertain and become irrevocable when the project is built. Liability for such damages, if the project is built without a decision by way of administrative mandamus and the city has erred, would have the same chilling effect on planning decisions eschewed by the courts in *Agins* v. *City of Tiburon, supra,* 24 Cal.3d 266 and *Air Quality Products. Inc.* v. *State of California, supra,* 96 Cal.App.3d 340.

Rezai cites cases for the proposition administrative mandamus is not a prerequisite to a suit for damages. (*Young* v. *City of Inglewood* (1979) 92 Cal.App.3d 437 [154 Cal.Rptr. 724]; *Nicholson-Brown, Inc.* v. *City of San Jose* (1976) 62 Cal.App.3d 526 [133 Cal.Rptr. 159]; *Leppo* v. *City of Petaluma* (1971) 20 Cal.App.3d 711 [97 Cal.Rptr. 840]; *Black* v. *City of Santa Monica* (1936) 13 Cal.App.2d 4 [56 P.2d 256].) But those cases did not involve complaints arising from the permit process, and all but one failed to deal with the propriety of administrative mandamus. The exception, *Leppo* v. *City of Petaluma, supra,* 20 Cal.App.3d 711, which predated *Pfeiffer,* held that administrative mandamus was not a prerequisite to a suit for damages where the city engaged in summary demolition, without any hearing on the issue. (*Id.* at p. 716.) Rezai was afforded a number of hearings.[2]

---

[2]Rezai contends administrative mandamus is not an administrative remedy, but a judicial one, relying on *Swartzendruber* v. *City of San Diego* (1992) 3 Cal.App.4th 896 [5 Cal.Rptr.2d 64]. That case upheld the sustaining of a demurrer for failure to seek administrative mandamus, basing its decision on a collateral estoppel theory for failure to exhaust a judicial remedy, rather than a failure to exhaust an administrative remedy. (*Id.* at p. 905.) Even if that analysis is proper, it has no affect on the conclusion we reach.

■ Rezai claims he could not have sought administrative mandamus because there was nothing to review, the city attorney[3] having revoked his permit without any hearing at all. (See Code Civ. Proc., § 1094.5, subd. (a) [court inquires into validity of "the result of a proceeding [for which] a hearing is required"].) He errs in his premise. Although the March 9, 1990, notice and order he received stated the permits were immediately revoked, it spoke of a new public hearing to be held in the near future. A month later the new public hearing was held before the planning commission, followed by city council hearings.

The hearings were effectively to determine the propriety of the initial revocation. The planning commission and city council could have granted the new conditional use permit under the same terms and conditions as the first one. Rezai does not claim he was prevented during the hearings from arguing the first permit had been wrongfully revoked. Nothing stopped him from pursuing administrative mandamus after the second conditional use permit significantly changed the development.[4] By all appearances, Rezai opted to do what the authority we have discussed prohibits: accept the benefits of the second conditional use permit and sue for damages based on the limitations it contained.

■ Rezai claims Tustin waived any right to require administrative mandamus proceedings before a suit was filed because it failed to advise him of the availability of the writ and the time limits for filing a petition. Code of Civil Procedure section 1094.6, subdivision (b) provides a 90-day limitation for filing a petition for writ of mandate and subdivision (e) of the section requires the public entity to give the landowner notice of that time period. In *El Dorado Palm Springs, Ltd.* v. *Rent Review Com.* (1991) 230 Cal.App.3d 335 [281 Cal.Rptr. 327], the court held the statute of limitations is tolled until notice is given. (*Id.* at pp. 344-346.) But Rezai did not plead tolling, or that he was unaware of the time period. This is not a case where he filed his petition after the 90-day period had expired; he never filed a petition at all.

■ Rezai argues Tustin should be estopped from raising the mandamus requirement because its failure to give him notice caused him to proceed with the modified project. But, he did not plead estoppel in his complaint, so there are no factual allegations supporting the claim. To establish estoppel, he would have had to show Tustin intended for him to act on its failure to advise, or its conduct must have been such that Rezai could reasonably

---

[3] Although Rezai refers to the city attorney, the notice and order he received was sent by the community development department.

[4] Indeed, even if the two proceedings were distinct, Rezai does not explain what prevented him from seeking a hearing on the revocation, and pursuing administrative mandamus if none were given or he was displeased with the result.

believe that is what Tustin intended. (*County of Sonoma* v. *Rex* (1991) 231 Cal.App.3d 1289, 1295 [138 Cal.Rptr. 472, 564 P.2d 14].) There is no indication any failure to advise was intentional.

 In any event, application of equitable estoppel in not appropriate. As noted in *County of Sonoma* v. *Rex, supra,* 231 Cal.App.3d 1289, ". . . an estoppel will not be applied against the government where it will 'effectively nullify "a strong rule of policy, adopted for the benefit of the public, . . ." [Citation.]' [Citation.] [¶] Courts will invoke the equitable estoppel doctrine against the government in rare circumstances. When considering the application of the doctrine with respect to zoning laws and permits, courts must balance the individual's interest against the interest of the public and the community in preserving the community patterns established by zoning laws. . . . 'To hold that the City can be estopped would not punish the City but it would assuredly injure the area residents, who in no way can be held responsible for the City's mistake.' [Citation.] The . . . public interest will generally outweigh any injustice to the individual which may result from 'relying upon an *invalid* permit to build issued in violation of zoning laws.' [Citation.]" (*Id.,* at pp. 1295-1296; see also *City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 493 [91 Cal.Rptr. 23, 476 P.2d 423].)

Here, for the reasons we have discussed, it is important that the landowner not be allowed to proceed with a project which has been scaled back to conform with the community's interest and then seek damages from the public fisc, when a prompt determination concerning the revocation of the prior permit might have quickly resolved any problem. The trial court was correct in granting judgment on the pleadings based on Rezai's failure to pursue administrative mandamus. We need not consider other potential bases for the court's ruling.

II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed. Respondents are entitled to their costs on appeal.

Sills, P. J., and Sonenshine, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 14, 1994.

---

*See footnote, *ante*, page 443.